UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DAQUARIOUS D. BROWN | CASE #: 1:20-CV-00541 |
| VERSUS | JUDGE DEE D. DRELL |
| CITY OF ALEXANDRIA, LOUISIANA, JERROD D. KING, BOBBY G. BRANTON, JR., THOMAS J. RODNEY, CARLA J. WHITSTINE, and KENNETH E. RACHAL | MAGISTRATE JOSEPH PEREZ-MONTES |
| | JURY DEMANDED |

---

## ORIGINAL COMPLAINT AND JURY DEMAND

---

**TO THE HONORABLE, THE UNITED STATES DISTRICT COURT IN AND FOR THE WESTERN DISTRICT OF LOUISIANA:**

## INTRODUCTION

1.     This is an action for compensatory damages, punitive damages, and attorney

fees  brought pursuant to 42 U.S.C. § 1983 and 1988, and for compensatory damages

under   the   laws   of   Louisiana   against   the   City   of   Alexandria   and   against

Chief Jerrod D. King, Detective Bobby Branton, Detective Thomas Rodney, Sergeant Carla Whitstine, and Lieutenant Kenneth Rachal.

2.      The claims arise from a March 19, 2019 incident in which Lieutenant Kenneth Rachal of the Alexandria Police Department (hereinafter "APD"), acting under color of state law, intentionally and willfully subjected Mr. Brown to excessive force and violence during the effecting of an arrest. Lieutenant Kenneth Rachal had been previous discharged as an officer of the APD for excessive force and violence but was rehired by the City of Alexandria.

3.      Detective Bobby Branton was present but took no steps to intervene in the assault and battery by  Lieutenant Kenneth Rachal.

4.      Chief Jerrod King and other officers took steps to coverup, conceal, or justify the unlawful actions of Lieutenant Kenneth Rachal, which were audio-video recorded by his "bodycam", and readily reviewable.  Chief King induced a training officer to write a letter justifying Lieutenant Rachal's excessive force and solely disciplined Rachal for violating the department's pursuit policy.  These actions by Chief King ratified the actions already undertaken at the direction of Lieutenant Rachal and the other defendant officers on behalf of the City of Alexandria.

# JURISDICTION

5.      Jurisdiction is founded on 28 U.S.C. § 1331. Mr. Brown further invokes jurisdiction of this Honorable Court, under 28 U.S.C. § 1367 to adjudicate claims arising under the Laws of the State of Louisiana including but not limited to Article 2315, et seq, of the Louisiana Civil Code.

# VENUE

6.      Venue lies in this Court under 28 U.S.C. § 1391(b) (2), as the events giving rise to this claim occurred within this judicial district.

# PARTIES

7.      Plaintiff, Daquarious D. Brown is a person of the full age of majority and a resident of Rapides Parish, Louisiana.

8.      Made defendants herein are the following:

(1)     **CITY OF ALEXANDRIA, LOUISIANA,** a political subdivision of the State of Louisiana within Rapides Landry Parish, and is the entity having ultimate authority, responsibility and control of and for the oversight, decisions affecting and funding of the Alexandria Police Department, including the authorization of and for the former's force of sworn police officers. As such, the City of Alexandria is ultimately responsible for all local policies, procedures, practices, decisions and customs employed by its law enforcement officials,

supervisors and officers, including also the ultimate responsibility for the proper hiring, training and supervision of all sworn Police Officers acting under their authority and the color of law.

(2)    **CHIEF JERROD DANIEL KING,** in his personal or individual capacity, who at all times material herein was the duly appointed Chief of the Alexandria Police Department, the Chief Law Enforcement Officer of the City of Alexandria and the policy maker for the Alexandria Police Department, and the person responsible for the proper hiring, training and supervision of all sworn Police Officers acting under the authority and the color of law for and within the City of Alexandria. Upon information and belief, a person of the full age of majority and a resident of the Parish of Rapides, a person for purposes of 42 U.S.C. § 1983, who can be served at his place of employment, the Alexandria Police Department, 1000 Bolton Ave, Alexandria, LA 71301.

(3)    **LIEUTENANT KENNETH EUGENE RACHAL,** in his individual capacity, for actions as a sworn officer of the Alexandria Police Department, acting under Color of Law and under color of the statutes, ordinances, regulations, policies, customs and uses of the City of Alexandria, and it's police department. Upon information and belief, a person of the full age of majority and a resident of the Parish of Rapides, a person for purposes of

42 U.S.C. § 1983, who can be served at his place of employment, the Alexandria Police Department, 1000 Bolton Ave, Alexandria, LA 71301.

(4) **SERGEANT CARLA JEAN WHITSTINE,** in her individual capacity, for actions as a sworn officer of the Alexandria Police Department, acting under Color of Law and under color of the statutes, ordinances, regulations, policies, customs and uses of the City of Alexandria, and it's police department. Upon information and belief, a person of the full age of majority and a resident of the Parish of Rapides, a person for purposes of 42 U.S.C. § 1983, who can be served at her place of employment, the Alexandria Police Department, 1000 Bolton Ave, Alexandria, LA 71301.

(5) **DETECTIVE BOBBY GERALD BRANTON, JR.,** in his individual capacity, for actions as a sworn officer of the Alexandria Police Department, acting under Color of Law and under color of the statutes, ordinances, regulations, policies, customs and uses of the City of Alexandria, and it's police department. Upon information and belief, a person of the full age of majority and a resident of the Parish of Rapides, a person for purposes of 42 U.S.C. § 1983, who can be served at his place of employment, the Alexandria Police Department, 1000 Bolton Ave, Alexandria, LA 71301.

(6)    **DETECTIVE THOMAS JAMES RODNEY,** in his individual capacity, for actions as a sworn officer of the Alexandria Police Department, acting under Color of Law and under color of the statutes, ordinances, regulations, policies, customs and uses of the City of Alexandria, and it's police department. Upon information and belief, a person of the full age of majority and a resident of the Parish of Rapides, a person for purposes of 42 U.S.C. § 1983, who can be served at his place of employment, the Alexandria Police Department, 1000 Bolton Ave, Alexandria, LA 71301.

9.    The right of jury trial is herein requested under the Federal Rules of Civil Procedure.

## FACTS

10.    On or about March 19, 2019, four officers of the Alexandria Police Department's "Criminal Investigations Property Crimes Division", not in standard APD uniform and riding in an unmarked police vehicle, were looking for a burglary suspect for questioning, Germanneek  Beyard. The officers, Lieutenant Kenneth Rachal, Sergeant Carla Whitstine, Thomas Rodney, Bobby Branton, visited the residences of the suspect's parents, and where they were advised he had just walked away from the mother's residence wearing black pants and a black hoodie. While traveling on Duhon Street the officers observed a tan or gold SUV parked on Hargis Street with two

black male front seat occupants wearing black clothing and braided hair as the suspect was described to have.

11.    Without identifying either front seat occupant as the suspect Beyard, the four officers exited their vehicle and approached the SUV. Sergeant Whitstine opened a door to the SUV. Thereupon the driver, Daquarious D. Brown, started the vehicle and drove away, ignoring the officers orders to stop. The officers re-entered their unmarked vehicle and initiated a high speed pursuit.

12.    None of the other officers intervened and sought to dissuade Sergeant Whitstine from her unlawful intrusion into Brown's vehicle nor in the high pursuit of a vehicle for which they lacked probable cause to arrest any occupant or reasonable suspicion that they had committed any offense.  It is not unlawful to refuse to speak to officers or to remain when they do not have reasonable suspicion to stop or probable cause to search or arrest.

13.    The high speed pursuit by the unmarked police vehicle, in violation of of Alexandria Police Department policy, proceeded through neighborhoods and several stop signs. The front seat passenger jumped out of the SUV, was subsequently captured and determined to be a Devon McCoy.  Ultimately Brown's SUV struck a vehicle at the intersection of the West MacArthur Service Road and Sterkx Road after running a stop sign.

14.     Brown continued fleeing in the SUV to Culpepper Road and then onto Laccasine Drive. Mr. Brown and the second seat passenger exited the SUV and fled on foot. [The second seat passenger was later identified and appeared voluntarily, and was not the suspect Beyard.] Mr. Brown was pursued on foot by Lieutenant Rachal and Detective Branton and arrested in a wooded area parallel to the 5200 block of Laccasine.

15.     As Mr. Brown, after stopping his flight and not resisting, was in the process of laying face down on the ground, Lieutenant Rachal suddenly and violently struck Mr. Brown repeatedly about the head and body with his pistol and then kicked Mr. Brown.  Detective Branton was present and observed the pistol-whipping and did not intervene.  This violence was inflicted for no apparent reason than retaliation for having fled from the officers (who were not in uniform and not in marked police vehicles).  Neither Rachal nor Branton mentioned the aforesaid violence in their reports.

16.     Although police officers don't need "reasonable suspicion" to speak to anyone, such individuals have the right to ignore the police and "go on his way". *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Pertinent to the issue presented here, an individual's "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for detention and seizure".

*Florida v. Bostick*, 501 U.S. 429, 437,  111 S.Ct. 115 L.Ed.2d 389 (1991).  See also *United States v. Morin*, 665 F.2d 765 (5th Cir. 1982). Here the officers lacked any reasonable suspicion to stop or probable cause to search Mr. Brown's vehicle at the initial encounter.

17.     Louisiana has a well-established doctrine that an individual may lawfully resist an unlawful arrest.  *State v. Ceaser*, 859 So. 2d 639, 643 (La. 2003) (citing *City of Monroe v. Goldston*, 661 So. 2d 428 (La. 1996); *White v. Morris*, 345 So. 2d 461, 465 (La. 1977)).

18.     Brown's flight cannot be probable cause to arrest or basis to frisk because it was provoked by the officers unreasonable and unlawful attempt to search Brown's vehicle by opening the door.  Clearly law enforcement officers cannot improperly provoke — for example, by fraud — a person into fleeing and use the flight to justify a stop. Cf. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963) ("A contrary holding here would mean that a vague suspicion could be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked."; case involving forcible entry into living quarters).

## PATTERN OF CIVIL RIGHTS VIOLATIONS

### UMIKA YOUNG

19.    On more than one occasion in October 2018, Sergeant Carla Whitstine, Officers Bobby Branton, Tanner Dryden, and Trevor Billington of the Alexandria Police Department visited the residence of Umika Young looking for her nephew and another young man, neither of whom resided with her. On one of those occasions Officer Branton had all her children exit the house and line up against the fence.

20.    On one occasion Officer Branton asserted that Umika Young had had an outstanding warrant and took her into custody.  When she got downtown it was determined that Umika had no outstanding warrant and she was released.

21.    Officer Branton threatened to and had Umika's vehicle towed on December 12, 2018, and it has remained in police storage as of March 23, 2020.

22.    Officers returned to her residence when Umika was not present and seized all the televisions within the residence.  Umika made complaints about this unlawful seizure to a supervisory officer.  During one of the visits to the police department seeking to obtain the release of the televisions, on February 1, 2019, Sergeant Carla Whitstine, Officers Bobby Branton, Tanner Dryden, and Trevor Billington falsely arrested Umika Young for the purported offense of

Possession of Drug Paraphenalia (crack pipe). This was a fabricated charge, lodged in retaliation for Ms. Young's complaints.

23.     Criminal proceedings were initiated in the City Court of Alexandria (Criminal Number 192266) under her maiden name Umika O. Osteen, and she was arraigned and pled not guilty on April 9, 2019. After several trial settings, for which Umika had to appear in court, the prosecution, after viewing video recording establishing Umika did not have a crack pipe, Nolle Prossed the charge on February 6, 2020.

## DEMARIO MARQUEL JONES

24.     On September 10, 2017, Quentavis K. Woodard and Courtney Nugent were operating a vehicle in the 2900 Block of Lee Street in Alexandria, Louisiana and had stopped at the red light at the intersection of Mason Street and Lee Street. They witnessed four officers, Sergeant James K. Mouliere, Corporal Gaven Shelton, Officer Jared Beebe, and Officer Michael Boone, chase and arrest Demario Marquel Jones.  After Jones was restrained, Sergeant Mouliere struck Jones more than once. No officer intervened to try to stop Mouliere or told him to stop his assault.

25.     After driving through the intersection when the light changed and safely pulled parking the vehicle on the side of the road, Woodard exited the vehicle and turned on the audio recording of his cellular telephone.   While standing on the opposite side of the street from the police, Woodard dictated the events into his telephone.  Apparently

fearing the aforesaid assault had been video recorded, the officers seized Woodard's cellular telephone and took him into custody.

26.     Nugent turned the vehicle around and stopped on the side of the road opposite from the aforesaid incident, stayed in the vehicle, and was videotaping the activity, which is within her First Amendment rights.  Sergeant James Keith Mouliere crossed Lee Street and forcibly seized Nugent's cellular telephone from her hand. It was returned about 15 minutes later, after the officers determined it did not contain a video recording of the assault and battery on Jones.

27.     Neither Nugent nor Woodard were violating any laws and were not acting suspiciously or furtively. Neither Woodard nor Nugent were armed with any weapon and were only carrying their cellular telephones.

28.     Neither Woodard nor Nugent were threatening anyone, neither by word nor action.  Both of them told the officers they were recording. Further, neither Woodard nor Nugent were interfering with traffic or with any activities of the Alexandria Police Department.

29.     Woodard's audio recording cellular telephone captured the officers looking for a reason to arrest either plaintiff.  Eventually one said, "We gotta book him in though, to make it look legit", or words to that effect.

30.     Ultimately, Nugent was issued a citation for Stopping in Roadway Prohibited and Woodard was issued a citation for No Seatbelt.  Finally, Woodard was taken to the Rapides Parish Detention Center 1, where he was booked for Interfering with a Police Officer.  Woodard's cellular telephone was turned over to the Rapides Parish Sheriff's Office, who released it to him when he made bond.

## DORIS MOSES

31.     While  Mrs. Doris Moses was getting ready for church services on Easter morning, Sunday, April 8 2007, several officers of the Alexandria Police Department came to her residence (3822 Lisa Street, Alexandria, LA) looking for an employee of Mr. Moses who rented a residence in their back yard. Mrs Moses consented to their entry into their yard and search of the rented residence. The officers determined there were some outstanding misdemeanor warrants for Mr. Moses but Mrs. Moses refused to consent to their entry into the Moses residence to look for Mr. Moses without a search warrant.

32.     The officers then observed Mrs. Moses leave for church, followed her vehicle down the street, and pulled her over without reasonable suspicion to stop or probable cause to arrest. Mrs. Moses was jerked out of her car, tasered, and then battered her, before arresting her for flight from an officer, and resisting arrest, even though she was NOT charged with a predicate offense. She was advised by the APD officers, that

if she would tell them where her husband was they would let her go. When she refused, she was taken into custody and her vehicle was towed. The APD dashboard camera recorded the police and the tow truck driver jokingly reenacting Mrs. Moses being hit with the taser. More than one APD dashcam recorded the assault and battery. https://youtu.be/oIpOLRQMrBM  https://youtu.be/1-2TnFsVglg Kenneth Rachal, then a Corporal, was the arresting officer and the assailant.

33.     Mrs. Moses was subsequently arraigned in Alexandria City Court, pleaded not guilty, and received a trial date. She retained counsel, and, after a pre-trial with Judge Starling on the day of trial, all charges were dismissed by the City Prosecutor's office.

34.     After Mrs. Moses was taken away from the scene, officers remaining at the Moses home called into Police headquarters for instructions. Police contacted the District Attorney's office and were advised not to enter the Moses home to execute the misdemeanor warrants. At least one officer, however, remained at the Moses' Martin Park home, partially blocked Lisa Street, and stopped black drivers, frisked them, handcuffed at least one, while letting white drivers pass by without interference, all in attempts to locate Mr. Moses (see Exhibit A, Statement of Lafayette Johnson III dated 5OCT2007).

35.    Kenneth Rachal was terminated from APD for excessive force, but was reinstated by the City of Alexandria Civil Service Board.  Hence, the City of Alexandria ratified the excessive force and unconstitutional actions practiced by Rachal and returned him to the position of authority whereby he could continue those practices and induce fellow officers to conclude if was acceptable behavior.

## CHRISTOPHER M. WILDER

36.    On May 9, 1999 off-duty Officer Kenneth Rachal stopped, in a civilian vehicle, a teenage boy in an incident of road rage, struck and battered the teenager, and then sought to coverup the incident by accusing him of numerous violations. The teenager's mother took him to the APD to lodge a complaint against Rachal, where the teenager was interviewed by two senior officers in the presence of an attorney, Beth Foote (see Exhibit B; Report of Interview dated 17MAY1999).

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – False Arrest in violation of the Fourth Amendment
### (Against Defendants Whitstine, Branton, Rodney and Rachal)

37.    The preceding paragraphs are here incorporated by reference.

38.    42 U.S.C. § 1983 provides that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

Plaintiff Brown in this action is a citizen of the United States and Defendants Whitstine, Branton, Rodney and Rachal are persons for purposes of 42 U.S.C. § 1983.

39.    Defendants have deprived Mr. Brown of his civil, constitutional and statutory rights under color of law and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. § 1983.

40.    Defendants' conduct deprived plaintiff of his right to be free of unreasonable searches and seizures, pursuant to the Fourth Amendment to the United States Constitution.

41.    At the time of the complained of events, Daquarious Brown had a clearly established constitutional right under the Fourteenth Amendment to be secure in his person and property from false accusations and fabricated evidence by law enforcement officers pursuant to due process of law.

42.    Defendants falsely arrested plaintiff and failed to intervene in each other's obviously illegal actions.

43.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time. The Defendant Officers' actions and omissions, as described herein, were objectively

unreasonable in light of the facts and circumstances confronting them and violated these Fourth and Fourteenth Amendment rights of Mr. Brown.

44.    Mr. Brown' apprehension and resultant confinement, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to his federally protected rights.  Defendants are not entitled to qualified immunity for the complained of intentional false statements and fabricated evidence.

45.    As a proximate result of the Defendants' unlawful conduct, Mr. Brown has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Mr. Brown has incurred special damages, including employment related loses and may continue to incur further damage related expenses, in amounts to be established at trial.

46.    Plaintiff Brown is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

47.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendants Whitstine, Branton, Rodney and Rachal under 42 U.S.C. § 1983, in that the actions of the officers were

taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Mr. Brown.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Excessive Force in violation of the Fourth and Fourteenth Amendments
### (Against Defendants Rachal and Branton)

48.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

49.    Plaintiff, Daquarious D. Brown, claims damages for the injuries set forth above under 42 U.S.C. § 1983 against the Defendants Rachal and Branton, in their individual capacitiesy, for violation of his constitutional rights under Color of Law.

50.    At the time of the complained of events, Plaintiff had a clearly established constitutional right under the Fourth Amendment to be secure in his person from unreasonable seizure through excessive force.

51.    Plaintiff also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by law enforcement.

52.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

53.    Defendants Rachal and Branton's actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Plaintiff.

54.    Defendants Rachal and Branton's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Mr. Brown's federally protected rights. The force used by these Defendant officers shocks the conscience and violated these Fourteenth Amendment rights of Plaintiff.

55.    Defendants Rachal and Branton's unlawfully seized Mr. Brown by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unreasonably restraining Mr. Brown of his freedom.

56.    The force used constituted deadly force in that it could have caused death and did cause serious bodily injury.

57.    None of the Defendant officers took reasonable steps to protect Plaintiff from the objectively unreasonable and conscience shocking excessive force of other Defendant officers or from the excessive force of later responding officers despite being in a position to do so. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer.

58.    Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Brown's federally protected constitutional rights.

59.    They did so with shocking and willful indifference to Plaintiff's rights and their conscious awareness that they would cause Plaintiff severe physical and emotional injuries.

60.    The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

61.    These individual Defendants acted in concert and joint action with each other.

62.    The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

63.    These individual Defendants are not entitled to qualified immunity for the complained of conduct.

64.    The Defendants to this claim at all times relevant hereto were acting pursuant to municipal custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

65.    As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be

determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically and other special damages related expenses, in amounts to be established at trial.

66.    On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his closed head injury, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

67.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – Racial Discrimination in Violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1981 (Against Defendants Rachal, Whitstine, Rodney and Branton)

68.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

69.    Plaintiff in this action is a citizen of the United States and all of the individual police officer Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

70.    All individual Defendants to this claim, at all times relevant hereto, were acting under the color of state law in their capacity as Denver police officers and their acts or omissions were conducted within the scope of their official duties or employment.

71.    At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from racial discrimination in law enforcement by police officers and to enjoy the equal protection of the laws.

72.    Plaintiff, as an African American is a member of a protected class, and thus also had the clearly established statutory right under this provision of 42 U.S.C. § 1981 to be free from racially motivated traffic stops, beatings, arrests, searches, and the filing of false charges.

73.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

74.    Plaintiff's race was a motivating factor in the decisions to open the door of his vehicle, attempt to search without probable cause, and use excessive force and then maliciously prosecute Plaintiff with false charges. Defendants' conduct was undertaken with the purpose of depriving Plaintiff of the equal protection and benefits

of the law, equal privileges and immunities under the law, and due process in violation of the Fourteenth Amendment and § 1981.

75.     Defendants engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Brown's federally protected rights.

76.     The acts or omissions of all individual Defendants were moving forces behind Plaintiff's injuries.

77.     These individual Defendants acted in concert and joint action with each other.

78.     The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

79.     Defendants are not entitled to qualified immunity for the complained of conduct.

80.     The Defendants to this claim at all times relevant hereto were acting pursuant to municipal custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Plaintiff.

81.     As a proximate result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue

to incur further medically and other special damages related expenses, in amounts to be established at trial.

82.    On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his closed head injury, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

83.    In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

**FOURTH CLAIM FOR RELIEF:**
**Violation of 42 U.S.C. § 1983 – Deliberately Indifferent Policies, Practices, Customs, Training, and Supervision in violation of the Fourth and Fourteenth Amendments.**
**(Against City of Alexandria and Defendant Chief King only)**

84.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

85.    Plaintiff in this action is a citizen of the United States and Defendants to this claim are persons for purposes of 42 U.S.C. § 1983.

86. The Defendants to this claim at all times relevant hereto were acting under the color of state law.

87. Plaintiff had the following clearly established rights at the time of the complained of conduct:

    a. the right to be secure in his person from unreasonable seizure through excessive force, under the Fourth Amendment;

    b. the right to bodily integrity and to be free from excessive force by law enforcement under the Fourteenth Amendment; and

    c. the right to be free from discrimination by police under the Equal Protection Clause of the Fourteenth Amendment and under 42 U.S.C. § 1981.

88. Defendant King and Defendant City knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

82. Plaintiff is informed and believes and do thereupon alleges that the Alexandria Police Department has a custom, policy, practice, and/or usage of condoning and/or ratifying the use of excessive force and/or conditions amounting to severe punishment by Alexandria Police Department officers, including but not limited to officers within the Alexandria Police Department's Criminal Investigations Property Crimes Division.

82. Plaintiff did not at any time provoke, invite, consent to, or otherwise allow or permit Defendants to utilize excessive and/or unnecessary force or to expose them to conditions amounting to severe punishment.

89.     The acts or omissions of these Defendants, as described herein, deprived Mr. Brown of his constitutional and statutory rights and caused him other damages.

90.     The acts or omissions of Defendants as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

91.     Defendants are not entitled to qualified immunity for the complained of conduct.

92.     Defendant Chief King and Defendant City were, at all times relevant, policymakers for the City of Alexandria and the Alexandria Police Department, and in that capacity established policies, procedures, customs, and/or practices for the same.

93.     These Defendants developed, promoted and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Mr. Brown's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.

94.     Defendant King and the Defendant City have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner

amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

95.     In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

96.     The deliberately indifferent training and supervision provided by Defendant City and Defendant King resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendant City and Defendant King and were moving forces in the constitutional and federal violation injuries complained of by Plaintiff.

97.     The policy of condoning, ratifying, and/or failing to prevent the excessive and/or unnecessary use of force by Alexandria Police Officers is a constitutionally deficient custom, policy, practice, and/or usage that repudiates the constitutional rights of persons such as Plaintiff and there is a direct causal connection between the custom, policy, practice, and/or usage and these constitutional deprivations.

98.     As the Chief of Police, Defendant King's failure to train, supervise, and/or discipline Alexandria Police Department members that use excessive force demonstrates that he personally implemented, maintained, enforced, and/or allowed the continued use of excessive force, acted with reckless and callous indifference, and knew of an/or acquiesced to such unconstitutional conduct.

99.     Defendant King's supervision, training, implementation, maintenance, enforcement, acquiescence, and/or allowance of the continued operation of the use of excessive force or the exposure of citizens and/or pretrial detainees to conditions amounting to severe punishment amounts to deliberate indifference to the right of persons who are victims of excessive police force because the custom, policy and/or practice is obviously deficient, likely to cause the violation of citizens' constitutional rights, and closely related to Plaintiff's injuries.

100.    As a direct result of Defendants' unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial. As a further result of the Defendants' unlawful conduct, Plaintiff has incurred special damages, including medically related expenses and may continue to incur further medically or other special damages related expenses, in amounts to be established at trial.

101.    On information and belief, Plaintiff may suffer lost future earnings and impaired earnings capacities from the not yet fully ascertained sequelae of his closed head injury, in amounts to be ascertained in trial. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

## LOUISIANA CLAIMS FOR RELIEF
*(Against All Defendants, including Chief King and the City of Alexandria)*

102.    Plaintiff Brown realleges and reargues all the allegations herein above, and assert violations of Louisiana law relative to constitutional torts, intentional torts and negligence by Defendants Whitstine, Branton, Rodney and Rachal of the Alexandria Police Department, who was acting within the course and scope of his employment by the City of Alexandria.  In addition, Defendants Rachal, Chief King, and the City of Alexandria are liable to Plaintiff for assault and battery and  intentional infliction of emotional distress.

103.    Defendant Rachal not only lacked justification for his assault since Plaintiff was not resisting at the time he was pistol-whipped and kicked.  The Louisiana State Police were called in but were not advised of the pistol-whipping by Rachal. The State Police prepared the Probable Cause affidavit, omitting any reference to the attempted illegal search or the pistol-whipping.  Plaintiff Brown was arrested arrested for Driving

Under Suspension in violation of LA R.S. 32:415, Reckless Operation in violation of LA R.S. 14:99, Hit & Run (Felony) violative of LA R.S. 14:100, Aggravated Flight violative of LA R.S. 14:108.1, and Negligent Injury in violation of LA R.S. 14:39.

104.    Defendants Rachal, Whitstine, Rodney, and Branton at all times relevant hereto were acting under the color of state law.

105.    Plaintiff had the following clearly established rights at the time of the complained of conduct:

   a.    The right to be secure in his person from unreasonable seizure through excessive force, unlawful arrest, and unlawful search under Article 1, Section 5 of the Louisiana Constitution of 1974;

   b.    The right to bodily integrity and to be free from excessive force by law enforcement under Article 1, Section 2 of the Louisiana Constitution of 1974; and

   c.    The right to be afforded due process of law by police under Article 1, Section 2 of the Louisiana Constitution of 1974.

106.    Any reasonable police officer knew or should have known of these rights at the time of the complained of conduct as they were clearly established at that time.

107.    Defendants Rachal, Whitstine, Rodney, and Branton are not entitled to qualified immunity for the complained of conduct relating to any of the below Louisiana Constitutional Torts.

## FOURTH CLAIM FOR RELIEF
## ASSAULT AND BATTERY AGAINST DEFENDANTS

108.  Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

109.  Defendant, Lieutenant Rachal assaulted and battered Daquarious D. Brown, in violation of Louisiana state law, specifically, La. C.C. art. 2315, et seq.  The other officers failed to intervene.

110.  As a result of the assault and battery, Daquarious D. Brown suffered damages.

111.  At all times material and present, Defendants Rachal, Whitstine, Rodney, and Branton , were acting within the course and scope of their employment with the Alexandria Police Department, and therefore, the City of Alexandria and Chief King are vicariously liable pursuant to Louisiana state law for the assault and battery and related Louisiana torts, committed by its employees, Defendants Rachal, Whitstine, Rodney, and Branton.

## FIFTH CAUSE OF ACTION
## (LOUISIANA TORT - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

112.  Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

113.   As a direct and proximate result of the intentional acts of Defendant Lieutenant Kenneth Rachal as described herein, carried out in reckless disregard, falsity and/or without sufficient factual information, Plaintiff suffered economic damage including loss of gainful employment, was caused physical injury, psychiatric distress,  and continues to suffer from severe and disabling shock, distress, anguish, sorrow, depression and loss of enjoyment of life.

114.   The aforesaid physical and psychological injuries sustained by Plaintiff Brown were caused wholly by reason of the intentional, reckless and/or negligent acts of Defendants Rachal, Whitstine, Rodney, and Branton as described herein.

115.   Defendants Rachal, Whitstine, Rodney, and Branton acted maliciously and with specific intent to oppress and harm Plaintiff and/or with reckless disregard of the consequences of his actions and omissions, and as a result Plaintiff are entitled to damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
## (LOUISIANA CONSTITUTIONAL TORT - DUE PROCESS)

116.   Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

117.   Further, plaintiff specifically alleges defendant, City of Alexandria, condoned the establishment of practices, procedures, customs, and policies, written and unwritten, which allowed the deprivation of plaintiff's constitutional rights as set out

herein. Such written and unwritten practices, procedures, customs, and policies include but are not limited to:

    a.    Inadequate and improper training, education, supervision, and discipline of law enforcement agents/officers/deputies commissioned and employed by it;

    b.    Condoning, not diciplining, and allowing police behavior that has been declared unconstitutional and unlawful; and,

    c.    Inadequate and improper procedures, policies and practices for identifying and taking appropriate action against law enforcement agents/officers/deputies and employees who are in need of re-training, corrective measures, re-assignment, or other disciplinary and non-disciplinary actions through a positive and early warning system designed to prevent the violations of citizens' constitutional and civil rights, including those of plaintiff.

118.    As a result of their unlawful and unconstitutional conduct, defendants, City of Alexandria, Chief Jerrod King and Defendants Rachal, Whitstine, Rodney, and Branton, jointly, individually and in solido, deprived plaintiff of his civil rights under Louisiana Constitution of 1974. Said defendants are liable, individually, jointly and in solido, unto plaintiff for such damages.

119.    The malicious actions, lack of actions, breach of duties, negligence and gross negligence of defendants individually and/or together caused physical and emotional harm and physical injury of Daquarious D. Brown and constitute wrongful and intentional torts under Louisiana Civil Code Articles 2315, 2316, and 2320.

120.    The defendant, City of Alexandria, through the Alexandria Police Department, and Chief King, acted in violation of Louisiana Civil Code Article 2315 and 2316 by negligently hiring, training, supervising and disciplining of the Defendants Rachal, Whitstine, Rodney, and Branton, regarding the use of excessive force after Rachal had been previously investigated and discharged for the similar misconduct.

121.    As a direct and proximate cause of the negligence and intentional acts, and constitutional torts and violations of his civil rights under 42 U.S.C. § 1983 and other Louisiana laws, plaintiff suffered damages of physical harm, severe mental anguish and ultimately caused the physical injury of Daquarious D. Brown.

## RESPONDEAT SUPERIOR
## LOUISIANA CIVIL CODE ARTICLES 2315, 2322 & 2317.1

122.    Plaintiff repeats and re-alleges the allegations in all the proceeding paragraphs as if set forth fully herein.

123.    The damages to and the injuries of Daquarious Brown are a result of the sole, combined and/or solidary fault, vicarious liability, strict liability and/or negligence of Defendants and/or joint tortfeasor(s) and/or his/its/their or as principal(s), employer(s), agent(s), representative(s), servant(s), employee(s), associate(s), parent(s), subsidiary(ies), lessor(s), lessee(s), insured(s) and/or insurer(s) in violation of La. Civil Code Art. 2315, Art. 2322 and Art. 2317.1. As a result of the sole, combined

and/or solidary fault, vicarious liability, strict liability and/or negligence of Defendants, Daquarious Brown, suffered general and/or special damages, including but not limited to physical pain and suffering, mental anguish and/or distress, great inconvenience, frustration, fear, embarrassment, humiliation, loss of enjoyment of life and society, and other damages that will be shown at the trial hereof.

## LIBERATIVE PRESCRIPTION

124.    Acting pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act. La. R.S. 29:721 et seq., and considering the recent Pandemic of Novel Coronavirus (COVID-19) in Louisiana, Governor John Bel Edwards' Declaration of Public Health Emergency in Proclamation Number JBE 2020-30 was issued on March 16, 2020, Section 5:A.of JBE 2020-30, which declared legal deadlines within the State of Louisiana, including liberative prescription and peremptive periods applicable to legal proceedings in all courts, administrative agencies, and boards, are hereby suspended until at least Monday, April 13,2020.

125.    Thereafter, on April 2, 2020 Governor John Bel Edwards' Declaration of Public Health Emergency in Proclamation Number JBE 2020-41 was issued, renewing Proclamation Number 25 JBE 2020, as well as Proclamations 27 JBE 2020, 30 JBE 2020,32 JBE 2020, 33 JBE 2020, and 37 JBE 2020. Section 5:H1of JBE 2020-41 similarly declared legal deadlines, including liberative prescription and peremptive periods

applicable to legal proceedings in all courts, administrative agencies, and boards, are

hereby suspended until at least Monday, April 30, 2020.

## PRAYER FOR RELIEF

126.   Plaintiff prays that this Court enter judgment for the Plaintiff and against each

of the Defendants and grant:

- a.   Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

- b.   Economic losses on all claims allowed by law;

- c.   Special damages in an amount to be determined at trial;

- d.   Punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

- e.   Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

- f.   Pre- and post-judgment interest at the lawful rate; and,

- g.   Any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## PLAINTIFF REQUESTS A TRIAL BY JURY.

*(Signature on following page)*

Dated:   **April 30, 2020**                     Respectfully Submitted,


By: */s/Brett L. Grayson*
BRETT L. GRAYSON, (#06268)
850 Kaliste Saloom Rd., Suite 120
Lafayette, Louisiana 70508-4230
Telephone: (337) 706-7646
Facsimile: (337) 706-7648
Email: brett.grayson@blgraysonesq.com
ATTORNEY    FOR DAQUARIOUS
BROWN