UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DAQUARIOUS DASHAWN BROWN | CIVIL DOCKET NO. 1:20-CV-00541 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| CITY OF ALEXANDRIA, ET AL | MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES |

<u>MEMORANDUM RULING</u>

Pending before the Court are the following motions: (i) a MOTION FOR SUMMARY JUDGMENT filed by Defendant, Jerrod D. King [Doc. 86]; (ii) a MOTION FOR SUMMARY JUDGMENT filed by Defendant, City of Alexandria [Doc. 87]; and (iii) a MOTION FOR SUMMARY JUDGMENT filed by Defendant, Kenneth E. Rachal [Doc. 89], each brought under Federal Rule of Civil Procedure 56 (collectively, the "Motions"). The plaintiff, Daquarious Brown ("Plaintiff" or "Brown"), opposes the Motions. [Doc. 102]. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties. For the following reasons, the Motions are GRANTED IN PART and DENIED IN PART, as follows.

<u>BACKGROUND</u>

In this matter, Brown claims that Lieutenant Kenneth E. Rachal ("Lt. Rachal"), of the Alexandria Police Department ("APD"), used excessive force while effecting his arrest on March 19, 2019. On that morning, four APD detectives in the "Criminal Investigations Property Crimes Division" were riding in an unmarked police vehicle looking for a suspect connected to a string of recent burglaries in the

1

area.  The officers wore "tactical" clothing that did not readily indicate they were law enforcement officers.   While looking for the suspected burglar, the detectives encountered an SUV stopped in the middle of the road.  Lt. Rachal, the driver of the police vehicle, stopped alongside the SUV without activating either the vehicle's siren or its emergency lights.  All four detectives exited the police vehicle and approached the SUV with their guns drawn.  As one detective began to open the driver's-side door, the driver of the SUV – later identified as Brown – sped off.

A chaotic pursuit ensued wherein Brown drove at high speeds through neighborhood streets while ignoring several traffic signs.  During his flight, Brown collided with a truck at an intersection causing serious injury to the other driver. Brown eventually jumped out of the moving SUV and took off on foot into the nearby woods.  Lt. Rachal stopped his police vehicle and, with his body camera activated, ran after Brown.

The next events are captured on video.  Lt. Rachal is seen trailing closely behind Brown with his radio in his left hand and his service pistol in his right.  In an attempt to get Brown to stop running, Lt. Rachal threatens to shoot and orders Brown several times to "get on the ground."  Brown then stops running, turns towards Lt. Rachal, who was by now only a few feet away, and begins to move towards the ground. Despite Brown's apparent submission, Lt. Rachal continues running towards Brown and strikes him several times before handcuffing him.

Brown was subsequently taken into police custody and booked into the Rapides Parish Detention Center.  He was released on bond the next day.

## Procedural History

Plaintiff filed his original Complaint in this matter on April 30, 2020.  [Doc. 1].  The Court stayed the litigation until Brown's pending state court criminal proceedings in the Ninth Judicial District Court were resolved.  Brown ultimately pleaded *nolo contendere* to two felony charges in a Bill of Information: Aggravated Flight From an Officer[1] and Hit and Run.[2]  [Doc. 31-1].  The Court lifted the stay and litigation resumed on March 4, 2021.  [Doc. 33].[3]

Brown filed a First Amended Complaint (the "Amended Complaint") on September 15, 2021.  [Doc. 57].  Brown contends in the Amended Complaint that the actions of Lt. Rachal and other members of APD violated his civil rights under 42 U.S.C. §§ 1983 and 1988 – specifically that Lt. Rachal used excessive force against him in violation of the Fourth and Fourteenth Amendments.  He also brings § 1983

---

[1]     The Bill of Information charged Brown with "refuse[ing] to bring his motor vehicle to a stop knowing that he had been given a visual and auditory signal to stop by a police officer, wherein human life was endangered, in violation of La. Rev. Stat. 14:108.1 C."

[2]     It also charged Brown with "intentionally fail[ing] to stop to give his identity and to render reasonable aid after becoming involved in an accident, while operating a motor vehicle upon the highways of Rapides Parish, Louisiana, when serious bodily injury is a direct result and when the driver knew or should have known that serious bodily injury had occurred, in violation of La. Rev. Stat. 14:100 C(2)."

[3]     Defendants do not now contend that Brown's excessive force claim is barred by the Supreme Court's holding in *Heck v. Humphrey*.  512 U.S. 477 (1994).  [Docs. 89, 102].  The Court has nevertheless considered Brown's claim under the standard set forth in *Heck* and finds it "temporally and conceptually distinct" from his underlying convictions.  *See, Poole v. City of Shreveport*, 13 F.4th 420, 427 (5th Cir. 2021) (finding an excessive force claim "temporally and conceptually distinct" from a conviction under La. Rev. Stat. 14:108.1 C because at the time of the use of force, the defendant had already stopped driving and exited his vehicle).  Therefore, there is no *Heck*-bar in this matter.

claims against the City of Alexandria and APD Chief Jerrod Daniel King[4] for their "deliberately indifferent policies, practices, customs, training, and supervision," also in violation of the Fourth and Fourteenth Amendments.   Finally, Brown asserts several state-law causes of action against all three defendants.[5]   Brown seeks compensatory damages, punitive damages, and attorney's fees.

On April 22, 2022, the Defendants filed the instant Motions on Plaintiff's § 1983 claims seeking dismissal on grounds of qualified immunity and because there is no APD policy or custom upon which to base municipal liability.   Defendants also seek summary judgment on the state law claims for the same underlying reasons. The Motions have been fully briefed and are now ripe for ruling.

## <u>ANALYSIS</u>

## I.   **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See*, Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a

---

[4]   Jerrod King retired as Chief of Police on November 1, 2020, and Ronney L. Howard was subsequently named as his replacement.

[5]   Under the section of the Amended Complaint titled "Louisiana Claims for Relief," Brown brings claims for: (i) assault and battery, (ii) intentional infliction of emotional distress, (iii) "Louisiana constitutional tort – due process," (iv) *respondeat superior*, and (v) punitive damages.  [Doc. 57].

verdict for the nonmoving party.'" *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding a motion for summary judgment, the Court must construe all facts and draw all inferences in the light most favorable to the non-movant.  *Houston v. Texas Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (citing *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013)).

If the dispositive issue is one on which the nonmovant will bear the burden of proof at trial, the movant may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmovant's claim.  *See*, *Celotex*, 477 U.S. at 325.  The burden then shifts to the nonmovant, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *Id.* at 324.  The nonmovant may not rest upon the pleadings, but rather must identify specific facts that establish genuine issues for trial.  *See, e.g.*, *Little*, 37 F.3d at 1075 ("Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial") (quoting *Celotex*, 477 U.S. at 322).

## II.   Qualified Immunity Standard

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Courts apply a two-part analysis when determining whether an official is entitled to qualified immunity.   First, the plaintiff must establish whether the defendant violated a constitutional right.  *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022). Second, the plaintiff must also show whether the constitutional right was "clearly established" at the time of the challenged conduct, such that the officer was on notice of the unlawfulness of his or her conduct.  *Id.*  Whether a right is clearly established depends on whether "the contours of a right are sufficiently clear" so that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  When conducting this analysis, courts look to see whether it is "beyond debate" that existing legal precedent establishes the illegality of the conduct.  *Id.*  The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the court.  *See*, *Evett v. DETNTFF*, 330 F.3d 681, 688 (5th Cir. 2003) (citing *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994)).

The usual summary judgment burden of proof is altered in cases involving a qualified immunity defense.  *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008).  An official need only plead his good faith, which then shifts the burden to the plaintiff who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 442 F.3d 252, 262 (5th Cir. 2005).  The plaintiff cannot rest on conclusory allegations and assertions but must instead demonstrate genuine issues

of material fact regarding the reasonableness of the official's conduct.  *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

## III.   Discussion

### A. Excessive Force § 1983 Claims Against Lt. Rachal

42 U.S.C. § 1983 provides a cause of action against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's constitutional rights.  *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021).  § 1983 itself is not a source of substantive rights, rather it merely provides a mechanism for vindicating federal rights conferred elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004).  To state a § 1983 claim, a plaintiff must: (i) allege a violation of a right secured by the Constitution or laws of the United States, and (ii) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).  Here, Defendants do not contest that Lt. Rachal was acting under color of law at the relevant time, but rather contend that his actions on March 19, 2019, did not violate Brown's constitutional rights.

### i. Alleged Constitutional Violation

The Fourth Amendment guarantees individuals the right to be free from unreasonable search and seizure, including the right to be free from excessive force by law enforcement.  *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir. 1996).  The Supreme Court has held that "all claims that a law enforcement officer has used

excessive force . . . in the course of an arrest, investigative stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment." *Graham v. O'Connor*, 490 U.S. 386, 395 (1989) ("the 'reasonableness' of a particular seizure depends not only on *when* it is made, but also on *how* it is carried out") (emphasis in original).  The Fifth Circuit routinely recognizes that such Fourth Amendment constitutional violations may lay the foundation for a § 1983 claim.  *See, e.g.*, *Ikerd*, 101 F.3d at 433-34.

To establish a § 1983 claim for excessive force, a plaintiff must establish "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Peterson v. Fort Worth*, 588 F.3d 838, 846 (5th Cir. 2009).  The Court determines excessiveness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  If a defendant's use of force was reasonable under the circumstances, then there is no violation of the Fourth Amendment.  *See, e.g.*, *Wilson v. City of Bastrop*, 26 F.4th 709 (5th Cir. 2022).

Here, Brown argues that Lt. Rachal used "excessive force and violence" while effecting his arrest by "suddenly and violently [striking] Brown repeatedly about the head and body with his pistol." [Doc. 57, ¶¶ 2, 19].  Brown also alleges that Lt. Rachal choked him by "jerking Brown from his stomach-to-the-ground prone position by the hood on Brown's jacket." [*Id.* at ¶ 19].  Brown contends that this force caused him injury and was "objectively unreasonable in light of the facts and circumstances." [*Id.* at ¶ 39].  Rachal raises two arguments in response.  First, he argues that any injuries

arising from the incident are *de minimis* and thus cannot support a cognizable § 1983 Fourth Amendment claim.  Second, he claims  he is entitled to qualified immunity irrespective of Brown's alleged injuries because his actions were objectively reasonable.  Accordingly, Lt. Rachal seeks dismissal of Brown's excessive force claim.

The Court first considers Lt. Rachal's argument that Brown's injury is constitutionally insufficient – or *de minimis*.  It is established Fifth Circuit precedent that an injury need not be "significant," but it must be more than *de minimis*.  *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (internal citations omitted). Plaintiff contends that Lt. Rachal's use of force caused him to suffer a "closed head injury" which left him bleeding.  [Doc. 57, ¶¶ 51, 52].  He also claims he now suffers emotional injuries, including feelings of anger, shock, distress, and depression due to the incident.  [Doc. 89-4, p. 24].  It is undisputed, however, that Brown did not seek medical attention for these injuries while at Rapides Parish Detention Center, nor has he visited a hospital or otherwise seen medical professionals at any time since his release from custody.  [Docs. 89-2, ¶¶ 30-31, 89-4, p. 20, 102-1, ¶ 18].  Brown also concedes:(i) that he did not communicate or otherwise convey his alleged injury to any police or corrections officer, (ii) that "you couldn't see [the blood] unless you grabbed your finger and [touched his head]" because it "wasn't dripping," and (iii) that he felt pain from his injuries for "no more than a week."  [Doc. 89-4, pp. 21-22].

All told, other than his own uncorroborated testimony, Brown fails to offer any summary judgment evidence – whether in the form of medical records, expert testimony, witness statements, or photographs – to corroborate his claim that he

suffered an injury from Lt. Rachal's alleged use of excessive force.  Likewise, the Court's independent review of the bodycam video footage from Brown's arrest and its aftermath does not show any visible injury.  Nor does it show that Brown was in any pain or discomfort as a result of Lt. Rachal's use of force.

The Court has serious doubts about the extent of Brown's injuries, if any. However, Fifth Circuit precedent seemingly all but eliminates the injury requirement for § 1983 excessive force claims at the summary judgment stage in cases where there is a factual issue as to the reasonableness of an officer's actions.  Under this precedent, even "relatively insignificant" and "purely psychological" injuries may support an excessive force claim, as long as they result from unreasonably excessive force.  *See*, *Sam v. Richard*, 887 F.3d 710 (5th Cir. 2018) (reversing the district court's summary judgment on excessive force claim where the plaintiff's injuries were *de minimis*, because the officer's use of force may have been objectively unreasonable); *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) ("*Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only"); *Bone v. Dunnaway*, 657 Fed. Appx. 258, 262 (5th Cir. 2016) ("whether an injury is cognizable depends on the reasonableness of the force, not just the extent of injury"). Therefore, to determine if Brown suffered a constitutionally significant injury, the Court must consider whether there is a genuine dispute of fact as to the reasonableness of Lt. Rachal's use of force.

Whether the amount of force used is clearly "excessive" and "unreasonable" depends on "the facts and circumstances of each particular case." *Deville,* 567 F.3d at 167 (quoting *Graham,* 490 U.S. at 396 (1989)).   The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed. *Ikerd*, 101 F.3d at 435.  Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396.  Of course, these factors take into account that a certain amount of force is necessarily reasonable when a police officer arrests a dangerous, fleeing suspect. *See*, *Tennessee v. Garner,* 471 U.S. 1, 3 (1985).  Indeed, "the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, but once an arrestee stops resisting, the degree of force an officer can employ is reduced." *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016).

Applying the *Graham* factors to this case, the Court finds that, on the facts as recounted by Brown, there is a material issue of fact as to whether Lt. Rachal's use of force was objectively unreasonable.  It is clear that at the time Lt. Rachal used force to take Brown into custody, Brown was trying to evade arrest – causing a chaotic car chase, where Brown hit another car, abandoned his car while it rolled away unmanned, and then tried to abscond on foot.  This is undoubtably dangerous criminal activity.  As to the threat Brown then posed to the officers and others, it is clear that Lt. Rachal was aware that Brown had struck another vehicle and continued

his high-speed flight but was unaware of whether Brown was then in possession of a firearm or other dangerous weapon.

But he parties factual accounts differ as to whether Brown resisted arrest.  Lt. Rachal contends that Brown "did not submit peaceably to a lawful arrest" and thus was "allowed to use reasonable force to effect the arrest and to overcome Brown's illegal resistance and threated resistance."  [Doc. 89-2, ¶¶ 39-40].  Brown denies resisting and asserts instead that he was "no longer fleeing and was submitting to Lt. Rachal's arrest" by "assuming the prone position, pursuant to Rachal's verbal instructions."  [Doc. 102-2, ¶¶ 20-21].  Both sides claim the video evidence taken from Lt. Rachal's bodycam supports their contentions.  When there is a video recording of the events in question, the Court should analyze the video evidence and reject the plaintiff's account only where the video evidence so clearly discredits the plaintiff's story that no reasonable juror could believe the plaintiff's version of the events.  *Scott v. Harris,* 550 U.S. 372, 380 (2007).  Upon review, the video footage depicts a fleeing Brown and a pursuing Lt. Rachal, who was repeatedly requesting that Brown "get on the ground."  [Docs. 86-8, 87-8].  The video shows that Brown ceased his flight, turned towards the pursing Lt. Rachal, and made preliminary movements indicating he was going to lie on the ground at the time Lt. Rachal first strikes him.  However, the video evidence is certainly not conclusive as to Brown's intentions.

Also in dispute is the nature of the force used to overcome the resistance – specifically, where on the body Lt. Rachal struck Brown and whether those strikes were with Lt. Rachal's hand, or the pistol held in it.  Defendants contend that "Rachal

12

did not strike Brown in the head with his pistol, but, instead, struck Brown with the lower part of the palm of his right hand, while still holding his pistol in the same hand" in an attempt to do "a brachial stun."  [Docs. 89-2, ¶ 24, 89-3, p. 90].  Brown counters that "Rachal struck Brown in the head with his pistol." [Doc. 102-1, ¶16]. Again, both sides claim the video evidence supports their contentions.  The video appears to depict Lt. Rachal striking Brown as he was facing the officer.  [Docs. 86-8, 87-8].  However, exactly where Brown is stuck and whether the blows were delivered by Lt. Rachal's hand or pistol is unclear from the video.

Based on Brown's account and the available video and audio evidence, the Court finds that a jury could reasonably conclude that Lt. Rachal struck an unresisting Brown on the head and body with his pistol.  Such use of force would be excessive and unreasonable.  *See*, *Staten v. Adams,* 939 F.Supp.2d 715, 731 (S.D. Tex. 2013) ("were a jury to consider plaintiff's version of the facts that an officer pistol-whipped plaintiff while plaintiff was sitting in the car with his hands up, it could conclude that such force was excessive and unreasonable to the need, even if plaintiff had failed to comply with orders to get out of the car and snatched his hands away as the officers attempted to cuff him").  The Court therefore finds that because under Plaintiff's version of events, Lt. Rachal's use of force would be objectively unreasonable, Brown's alleged injuries – though minor – exceed the *de minimis* threshold as a matter of law and are therefore constitutionally significant.  *See*, *e.g.*, *Ikerd*, 101 F.3d at 434 n. 9 ("[A]ny force that would be objectively unreasonable under *Graham* would not fall within the *de minimis* language of *Hudson*").

### ii.  Clearly Established Law

The Court next considers the second prong of the qualified immunity analysis, that is, whether Lt. Rachal's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. *Solis,* 31 F.4th at 981.  Here, it is clearly established law that violently slamming or striking a suspect who is not actively resisting constitutes an excessive use of force. *Bush v. Strain*, 513 F.3d 492, 501-02 (5th Cir. 2008); *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2012) (holding it was objectively unreasonable for an officer to tase and strike the plaintiff arrestee with a nightstick without resorting to other less violent means when the arrestee's behavior could not be considered active resistance)[6]; *Staten,* 939 F.Supp.2d 715.

Under the Plaintiff's version of the facts, a reasonable officer would know that striking an unresisting suspect with a pistol is in violation of clearly established law. *Newman*, 703 F.3d at 764.  Accordingly, Lt. Rachal is not entitled to qualified immunity and his motion for summary judgment on Plaintiff's excessive force claim under § 1983 is denied.

### B. *Monell* Claims Against the City of Alexandria and Chief King

Brown also brings claims against the City of Alexandria (on behalf of the Alexandria Police Department) and APD Chief of Police King, in his personal

---

[6]     Though *Newman* involved the use of a baton and taser, the "lawfulness of force does not depend on the precise instrument used to apply it." *Newman*, 703 at 764 (citing *Spann v. Rainey*, 987 F.2d 1110, 1115–16 (5th Cir.1993)) (use of flashlight, hands, and nightstick); *Peterson*, 588 F.3d at 846 (hard knee-strike).

capacity,[7] for their "deliberately indifferent policies, practices, customs, training and supervision" under § 1983.  [Doc. 57].  Brown appears to assert three separate bases of liability under § 1983; *i.e.*, (i) that APD has an overt policy or practice of condoning or ratifying the use of excessive force [*Id.* at ¶ 59]; (ii) that APD failed to train and supervise officers in the use of force [*Id.* at ¶ 69]; and (iii) that APD created and tolerated an "atmosphere of lawlessness" by failing to discipline officers using excessive force.  [*Id.* at ¶¶ 66,70].  The Court will address each of these three claims in turn.

### i. Municipal Liability for Excessive Force

In *Monell v. Department of Social Services*, the Supreme Court held that a municipality cannot be held liable under § 1983 solely because its employee committed a constitutional tort.  436 U.S. 658, 691 (1978).  Rather, to hold a municipality liable under § 1983, the plaintiff must identify (i) an official policy (ii) promulgated by the municipal policymaker (iii) that was the 'moving force' behind the violation of a constitutional right.  *Piotrowski v. City of Houston.,* 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell,* 436 U.S. at 694).  To establish the "moving force" requirement, a plaintiff must show that the municipality's policy or custom that caused the alleged harm was either unconstitutional or "promulgated with deliberate indifference."  *Id.*

---

[7]     To the extent Plaintiff also brings claims against Chief King in his official capacity, those claims are treated claims against City of Alexandria.  *See Hafer v. Melo,* 502 U.S. 21, 25 (1991) ("suits against state officials in their official capacity therefore should be treated as suits against the state").

The existence of an official policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Burge v. St. Tammany Parish,* 336 F.3d 363, 369 (5th Cir. 2003)).  In the absence of an actual policy, a plaintiff can point to "a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents a municipal policy." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).  To establish the existence of a custom or unofficial policy, a plaintiff must adduce evidence that the unconstitutional conduct occurred in cases other than his own, or in the rare case, that a final policymaker took a single unconstitutional action. *Id.* This "single incident exception," however, is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005)).  As such, a plaintiff's evidence must be sufficient to the inference that the municipality knew about and accepted a widespread course of unconstitutional conduct. *Peterson*, 588 F.3d at 851 n.4.

In this case, Brown does not cite any actual APD policy promoting the use of excessive force, nor does he claim this case arises under the "single exception doctrine."  Instead, Brown identifies three examples of alleged unconstitutional

conduct that support his claim of a "pattern of civil rights violations" within APD.  He first identifies a string of incidents with Umika Young in 2018, wherein several APD officers allegedly improperly towed Young's vehicle, seized her property, arrested her, and initiated false criminal proceedings against her.[8]  [Doc. 57, ¶¶ 22-26].  Brown next points to an incident on April 8, 2007, involving Doris Moses and Lt. Rachal, where Lt. Rachal "jerked [Moses] out of her car, tasered, and then battered [her] before [arresting her] for flight from an officer and resisting arrest" and was subsequently disciplined.[9]  [*Id.*, ¶ 28].  Finally, Brown cites a 1999 incident involving Lt. Rachal and a teenage boy, where Lt. Rachal "struck and battered the teenager" and was subsequently disciplined by APD.  [Doc. 57, ¶ 32].

The Court finds that Brown's allegations fail to establish a pattern of constitutional violations sufficient to establish municipal liability.  As an initial matter, the incident involving Young does not concern the use of excessive force and is thus not sufficiently similar to the issues *sub judice*.  *Peterson*, 588 F.3d at 551 (a pattern requires similarity, specificity, and sufficiently numerous prior incidents).  Further, Brown fails to provide any evidence that the other two events even constitute constitutional violations.  Plaintiff did not produce any evidence of

---

[8]     Brown states that the criminal prosecution against Young ended in a *nolle prosequi* after video evidence established that she did not commit the charged crime.  [Doc. 57, ¶ 26].

[9]     Lt. Rachal was terminated from the APD on December 11, 2007, due to his involvement in the incident with Moses.  [*Id.*, ¶ 31]; *see also*, [Doc. 89-3, pp. 61-69].  Following an Alexandria Municipal Fire and Police Civil Service Board meeting on March 4, 2008, Lt. Rachal's termination was vacated, and he was reinstated as an APD officer.  [Docs. 57, ¶ 31, 89-3, p. 70].

substantiating constitutional violations for excessive force in these two incidents, nor did he otherwise provide evidence that excessive force occurred.   Even assuming *arguendo* that these events did amount to constitutional violations, they still are insufficient to establish a pattern of constitutional violations by APD.[10]   These two events occurred nearly ten years apart from one another and another ten years before the incident underlying this matter. *Zarnow*, 614 F.3d at 169 (prior occurrences must be not only similar to the conduct at issue, but also persistent, as opposed to sporadic or isolated).

Brown also fails to place these two events within the appropriate context.  *Id.* (the pattern of unconstitutional actions must have "occurred for so long and with such frequency that the course of conduct demonstrates the [municipality's] knowledge and acceptance of the disputed conduct").  Without further clarifying the size of APD and the number of arrests made over the corresponding twenty-year period, these incidents are insufficient to establish a pattern of constitutional violations by APD. *See, e.g.*, *Davidson v. City of Stafford*, 838 F.3d 384, 396-97 (finding no pattern; three incidents over three-and-one-half years); *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (finding no pattern; two reports of violations of a policy in four years); *Peterson*, 588 F.3d at 851 (finding no pattern; twenty-seven complaints of excessive force over four years); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (finding no pattern; eleven incidents of warrantless searches).

---

[10]     That we would have to consider whether each prior incident constitutes an unconstitutional arrest further cuts against a finding of a pattern.  *See*, *Davidson v. City of Stafford*, 848 F.3d 384, 396 n.6 (5th Cir. 2017).

At bottom, Brown's failure to establish the first prong under *Monell* means he cannot maintain his municipal liability claim against the City of Alexandria for excessive force.  Accordingly, summary judgment in favor of the City of Alexandria and Chief King is granted as to Plaintiff's claim of municipal liability for excessive force under § 1983.

### ii.  Municipal Liability for Failure to Train or Supervise

To state a claim for the failure to train, a plaintiff must plead that: (i) the training procedures of the municipality's policymaker were inadequate, (ii) the policy maker was deliberately indifferent in adopting the training policy, and (iii) the inadequate training policy directly caused the plaintiff's injury.  *Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000).  In this context, deliberate indifference requires actual or constructive notice that a particular omission in a training program causes city employees to violate citizens' constitutional rights, yet the municipality nevertheless chooses to retain that program.  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  A plaintiff must generally show that, given the duties assigned to specific officers or employees, "the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights."  *City of Canton*, 489 U.S. 378, 390 (1989).  "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  *Id.*  A pattern of similar constitutional violations by untrained employees is ordinarily necessary to

demonstrate deliberate indifference. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018).

Brown alleges that APD and Chief King provided inadequate training to Lt. Rachal regarding "the use of force" and "how to intervene when a fellow officer is using excessive force." [Doc. 102, p. 17]. Brown fails, however, to identify specific facts about the actual training protocols of the APD that support either contention. Nor does he describe any deficiencies in APD's training program as they relate to Lt. Rachal's assigned duties. *Valle*, 613 F.3d at 547 (requiring a showing of inadequate training "in light of the duties assigned to specific officers or employees") (quoting *City of Canton*, 489 U.S. at 390). Instead, Brown only alleges, without more, that additional "specialized training" was required and not provided by APD.

To the contrary, the City of Alexandria submits Lt. Rachal's training records which evidences he completed the Peace Officer Standards and Training (POST) certified course concerning the use of force in 2017 and attended a course entitled "Managing the Use of Force by Police Officers" in 1996. [Doc. 87-7]. In addition, the APD's Rules and Regulations handbook provided by the City of Alexandria strictly directs all APD officers to "use only that amount of force that is reasonable and necessary in light of the facts and circumstances confronting them." [Doc. 87-21, p. 63]. Given this, and because Brown has only supplied the conclusory allegations in support of his inadequate training claim, summary judgment is granted as to Plaintiff's § 1983 claims for failure to train against the City of Alexandria and Chief King, in his official capacity.

### iii.  Municipal Liability for Failure to Discipline

Brown finally alleges that the City of Alexandria is liable for its failure to discipline Lt. Rachal.  To state a claim for the failure to discipline, a plaintiff must plead that: (i) the municipality failed to discipline its employees, (ii) the failure to discipline amounted to deliberate indifference, and (iii) the failure to discipline directly caused the constitutional violations in question.  *See*, *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009) (citing *Piotrowski*, 237 F.3d at 580) (extending the *City of Canton* factors to include a failure to discipline claim).  In support of his claim, Brown makes three arguments.  First, he points again to the same instances of allegedly improper conduct involving Lt. Rachal and suggests that APD and Chief King failed to properly discipline him for this conduct.[11]  [Doc. 57, ¶¶ 27-32].  Brown next asserts that the internal affairs investigator tasked with reviewing Lt. Rachal's actions in this matter was "appointed by Chief King to justify Lt. Rachal's assault in Brown's arrest."  [Doc. 102, p. 18].  Finally, Brown attaches a "voice recording of the conversation between Reginald Cooper and Lillie Evans" and a "transcription of a voice recording" to his opposition, which purportedly establishes that the "current Assistant Chief of Police has made statements that systemic civil rights violations was part of the APD [sic] culture."[12]  [Doc. 102, pp. 3, 18]; *see also*, [Docs. 102-6, 102-

---

[11]      *See*, Section III.B.i. *supra*.

[12]      Brown's attorney, Brett Grayson, also represents Cooper in a separate lawsuit against the City of Alexandria pending before this Court.  *See*, *Clark v. City of Alexandria, et al*, No. 1:20-cv-01581-DCJ-JPM (W.D. La. Dec. 07, 2020).  That matter involves allegations of civil rights violations asserted by several APD employees, including Cooper.

7].  In this regard, Brown contends that had APD and Chief King rendered proper discipline given Lt. Rachal's history of excessive force, "Rachal would not have been an APD officer that improperly pursued and used excessive force during the arrest of the plaintiff."  [Doc. 102, p. 10].

Brown again fails to adduce evidence that would permit a jury to find that the City of Alexandria acted with deliberate indifference towards his constitutional rights in failing to discipline Lt. Rachal.  Deliberate indifference requires a plaintiff to produce proof – ordinarily through a pattern of similar constitutional violations – that a municipal actor disregarded a known or obvious consequence of his actions. *Connick*, 563 U.S. at 61.  Brown again has not provided any other instances where officers were not disciplined in response to clear constitutional violations.  Further, with regard to Lt. Rachal specifically, the summary judgment evidence shows that APD terminated his employment on a prior occasion due to alleged misconduct, but that he was subsequently reinstated by the City of Alexandria civil service board.  Thus, nothing shows a pattern by the APD of failing to discipline its officers for the use of *excessive force*.  *See*, *Peterson*, 588 F.3d at 551 (a pattern requires similarity, specificity, and sufficiently numerous prior incidents).  Accordingly, Defendants are also entitled to summary judgment on Brown's municipal liability claim for the failure to discipline.

### C. Individual Liability of Chief King

Brown also appears to assert claims against APD and Police Chief King, individually, as the supervisor of Lt. Rachal under the same theories of liability for

which he seeks to hold the City of Alexandria liable.  [Doc. 57].  With the exception of the application of qualified immunity, the analyses for these claims are largely the same whether brought against an official in his personal or official capacity.  *See, e.g., Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009); *see also, Curran v. Aleshire*, 67 F.Supp.3d 741, 761 (E.D. La. 2014).  A showing as to some policy decision, notice, and the deliberate indifference standard are all required.  *Burge*, 336 F.3d at 370.

Accordingly, the Court comes to the same conclusions regarding these claims as it did in those brought against the municipality.  In sum, Brown fails to produce any relevant evidence supporting Chief King's knowledge or deliberate indifference. As such, Chief King is entitled to qualified immunity and summary judgment is granted.

### D. State Law Claims

Defendants also seek summary judgment dismissing Brown's claims against them under Louisiana law for: (i) assault and battery, (ii) intentional infliction of emotional distress, (iii) "Louisiana constitutional tort – due process," (iv) *respondeat superior*, and (v) punitive damages.  [Doc. 57].

### i.  Assault and Battery

Louisiana's excessive force tort mirrors its federal constitutional counterpart.  *Kyle v. City of New Orleans,* 353 So.2d 969, 971 (La. 1977).  "Under Louisiana law, the torts of assault and battery when raised against a law enforcement officer acting in the course of employment require a showing that the law enforcement

officer acted with unreasonable or excessive force." *Elphage v. Gautreaux*, 969 F.Supp.2d 493, 515 (M.D. La. 2013) (citing *Gerard v. Parish of Jefferson*, 424 So.2d 440, 444 (La. App. 5 Cir. 1982)).  Accordingly, as discussed above with regard to the § 1983 claims against Lt. Rachal, material disputes of fact preclude summary judgment. *See*, *Curran v. Aleshire*, 67 F. Supp. 3d 741, 753 (E.D. La. 2014); *Deville*, 567 F.3d at 173.

### ii.  Intentional Infliction of Emotional Distress

An intentional infliction of emotion distress ("IIED") claim requires proof that: "(1) the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991).  Conduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous." *Nicholas v. Allstate Ins. Co.*, 1999-2522, p. 10-11 (La. 2000), 765 So.2d 1017, 1025.

In support of his IIED claim, Brown argues that "[c]learly the use of excessive force by a law enforcement officer in the arrest of a surrendering suspect is extreme and beyond all bounds of decency."  [Doc. 102, p. 23].  However, Brown provides no legal or factual support to back this conclusory statement, nor does the Court find any summary judgment evidence establishing that Lt. Rachal "desired to inflict severe emotional distress" or "knew that severe emotional distress would be certain or substantially certain to result from [Lt. Rachal's] conduct." *White*, 585 So.2d at

1209.  Plaintiff's IIED claim is therefore appropriately dismissed on summary judgment.  *White*, 585 So.2d at 1209.

### iii.  "Louisiana Constitutional Tort – Due Process"

Brown essentially reasserts his § 1983 claims against Lt. Rachal, the City of Alexandria, and Chief King as violations under Louisiana Constitution Article I, §§ 2 and 5.[13]  [Docs. 57, 102].  Indeed, the scope of protection under Article I, Section 2 of the Louisiana Constitution parallels the Fourteenth Amendment to the United States Constitution.  *Johnson v. City of Monroe,* 2007 WL 1521436, at *5 (W.D. La. May 21, 2007).  In addition, while Article I, Section 5 provides a higher standard of liberty than that afforded by the federal constitution, there is no legal precedent indicating the Louisiana Constitution affords Brown greater protection than the Fourth Amendment under the facts of this case.  *See, Bryant v, City of Monroe*, 2013 WL 5924731, at *12 (W.D. La. Oct. 13, 2013) ("Louisiana's additional protection against invasions of privacy may be traced back to the expanded right to marital privacy and in response to fears of unrestrained gathering and dissemination of information or individuals via computer banks") (citing *State v. Jackson*, 2000-0015, p. 10 (La. 2000), 764 So.2d 64, 71).

Accordingly, for the reasons provided in Sections III.A though III.C, the Court grants summary judgment dismissing Brown's Louisiana constitutional claims

---

[13]     Plaintiff's Amended Complaint seemingly only asserts a Louisiana constitutional violation under Article I, Section 2.  However, his opposition to the instant Motions asserts a Louisiana constitutional violation under Article I, Section 5, only.  Notwithstanding this inconsistency, the Court considers Brown's "Louisiana constitutional tort" claim under both sections.

against the City of Alexandria and Chief King and denies summary judgment as to these claims against Lt. Rachal.

### iv. *Respondeat Superior*

Brown claims that the City of Alexandria and Chief King are vicariously liable under Louisiana Civil Code Article 2320 for Lt. Rachal's negligence under Louisiana Civil Code Articles 2315, 2317.1, and 2322. [Doc. 57, ¶¶ 94-95]. Unlike § 1983 claims, municipalities do not enjoy special protection from vicarious liability under Louisiana law and are subject to *respondeat superior* like every other employer. *See*, *Deville*, 567 F.3d at 174 (citing *Brasseaux v. Town of Mamou,* 1999-1584, p. 7 (La. 2000), 752 So.2d 815). "[V]icarious liability [under Article 2320] applies to law enforcement employers as well." *Clark v. Lafayette Police Department*, 2018 WL 3602974, at *11 (W.D. La. Jul. 11, 2018) (quoting *Bussey v. Dillard Dep't Stores, Inc.*, 2007-1379, p. 4 (La. App. 1 Cir. 2008), 984 So. 2d 781, 784). An employer is only liable for the tortious conduct of his employee if the employee is acting within the course and scope of employment. *Id.*

Here, the City of Alexandria does not dispute that Lt. Rachal was acting in the course and scope of his employment with the APD when he arrested Brown. Rather, it asserts that it is not vicariously liable because there is no evidence of any negligence or intentional tort in this matter. For the reasons stated in Section III.A., *supra*, the Court disagrees and the City of Alexandria's motion for summary judgment as to vicarious liability is denied. However, summary judgment dismissing Brown's vicarious liability claim against Police Chief King is granted. *See*, *White v. City of*

*Winnfield*, 2021 WL 2880522, at *11 (W.D. La. March 5, 2021) ("under Louisiana law, a police chief is not vicariously liable for acts of his or her subordinates").

As for Brown's claims under Articles 2317.1 and 2322 – which relate to premises liability for damages caused by ruin, vices, or defects of things or the ruin of a building – Brown provides no evidence to support a claim under either of these articles. Nor do these claims make any sense given the facts alleged. Summary judgment for the City of Alexandria and Chief King is granted.

### v. Punitive Damages Under Louisiana Law

Punitive damages under Louisiana law are only allowed when "expressly authorized by statute." *Ross v. Conoco, Inc.*, 2002-0299, p. 14 (La. 10/15/02), 828 So.2d 546, 555. Plaintiff concedes that he cannot show any Louisiana statute authorizing punitive damages for his claims in this matter. Accordingly, Brown's claim for punitive damages under Louisiana law is dismissed.

### CONCLUSION

For the above-mentioned reasons,

IT IS HEREBY ORDERED that Defendant, Kenneth E. Rachal's MOTION FOR SUMMARY JUDGMENT [Doc. 89] is GRANTED IN PART and the following claims are DISMISSED WITH PREJUDICE:

- Intentional infliction of emotional distress under Louisiana law; and

- Punitive damages under Louisiana law.

In all other respects, Defendant, Kenneth E. Rachal's MOTION FOR SUMMARY JUDGMENT [Doc. 89] is DENIED.

IT IS FURTHER ORDERED that Defendant, City of Alexandria's MOTION FOR SUMMARY JUDGMENT [Doc. 87] is GRANTED IN PART and the following claims are DISMISSED WITH PREJUDICE:

- Municipal liability under 42 U.S.C. § 1983;

- Intentional infliction of emotional distress under Louisiana law;

- Due Process claims under the Louisiana Constitution; and

- Punitive damages under Louisiana law.

In all other respects, Defendant, City of Alexandria's MOTION FOR SUMMARY JUDGMENT [Doc. 87] is DENIED.

IT IS FURTHER ORDERED that Defendant, Jerrod D. King's MOTION FOR SUMMARY JUDGMENT [Doc. 86] is GRANTED and all claims brought against him are DISMISSED WITH PREJUDICE:

THUS, DONE AND SIGNED in Chambers on this 21st day of July 2022.

_____

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE